677 So.2d 709 (1996)
STATE of Louisiana
v.
Willie ALLEN, Jr.
No. 95 KA 1515.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Rehearing Denied August 19, 1996.
*711 Doug Moreau, District Attorney, Baton Rouge, Tracey Ewing, Asst. District Attorney, Baton Rouge, for Appellee, State.
Edward Greenlee, Baton Rouge, for Defendant/Appellant, Willie Allen, Jr.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
Defendant, Willie Allen, Jr., was charged by bill of information with three counts of armed robbery (counts one, two and four) and one count of first degree robbery (count three), violations of La.R.S. 14:64 and 64.1, respectively. After trial by jury, defendant was convicted as charged on all counts. For each of the armed robbery convictions, defendant received a sentence of thirty years at hard labor; and for the first degree robbery conviction, the court imposed a sentence of twenty years at hard labor. The court credited defendant with time served and imposed all four sentences without benefit of parole, probation or suspension of sentence. The court further ordered that the armed robbery sentences run concurrently with each other but consecutively to the first degree robbery sentence. Defendant appeals, urging six assignments of error. Assignments of error numbers one, two and three were expressly abandoned in brief and will not be considered.
All four offenses occurred in East Baton Rouge Parish in September of 1993. Counts one and two occurred at a Circle K convenience store outside the city limits of Baton Rouge. Counts three and four occurred inside the city limits, at another Circle K convenience store and a Texaco Service Station, respectively. In each instance, the victim was the store clerk who was on duty at the time of the crime. A summary of the facts relating to the crimes follows.
The count one offense occurred at about 1:46 a.m. on September 9. A black male entered the store and asked L.B. Mize, the victim, if he had any garbage bags. Mize answered in the affirmative and pointed out the item to the man. The man picked up a box of the bags. Mize proceeded about his work. In the meantime, the man removed one of the bags from the box, placed the bag on the counter and told Mize to put cigarettes and money in the bag. When the man's "clothes opened," Mize saw a revolver that was "stuck in [the man's] belt." The perpetrator told Mize he did not want to shoot him. Mize placed cigarettes and about $25.00-30.00 in the bag. The robber took the bag and left. Mize was unable to identify the *712 perpetrator. However, the police lifted three latent fingerprints from the box of bags that the robber opened and left in the store. Defendant's left thumbprint was identified as matching one of the latent prints.
At about 3:15 a.m. on September 16, Darren Wallace, the count two victim, was putting up stock when a black male came into the store where he was working and asked for a pack of Kool cigarettes. When Wallace went to the counter to get the cigarettes, the man put a nine millimeter pistol in Wallace's face; and using very derogatory language ordered Wallace to get on the floor. Wallace complied. However, when the perpetrator was unable to open the cash register, again using very derogatory language, he directed Wallace to open the cash register. Wallace got up, opened the cash register, removed money from the cash register, placed the money on the counter and got back on the floor. At the time Wallace got up to open the cash register, he observed that there was also a Caucasian male in the store and that this other individual was in the process of removing liquor from the store. After the perpetrators left, Wallace observed a black Mustang being driven away. During a pretrial photo lineup, Wallace identified defendant as the black male perpetrator; he also made an in-court identification of defendant at the trial.
At shortly after 1:00 a.m. on September 24, two black men entered the store where Peggy Moore, the count three victim, was working. One of the men, who was wearing slippers, picked up a box of trash bags, opened the box and removed one of the bags as he walked toward Moore. The other man said nothing and only stood during the incident. The man who was wearing the slippers told Moore he wanted her to put all the cigarettes into the bag. She initially just looked at him. He told her it was a robbery and to do as he had previously stated. When Moore leaned down to place the cigarettes in the bag, the man told Moore to comply as fast as she could and that he did not want to hurt her. At that time, he "patted his side," causing Moore to believe he had a weapon (a gun), although she did not see a gun. Moore placed the cigarettes in the bag and handed it over to the man. The robber then told Moore to open the cash register. Moore complied, and the man took approximately $30.00 from the cash drawer. The two men left the store together. On the day after the robbery, Moore viewed a photographic lineup from which she identified defendant as the man who robbed her. She also identified defendant in court at the trial.
Just before midnight on September 30, 1993, a black man came into the Texaco station where Janice Towns Von Hoffburg, the count four victim, was working. When he entered, the man asked Von Hoffburg for a pack of Kool cigarettes and a cigarette lighter. She retrieved the cigarettes and lighter. The man pulled up his shirt, allowing her to see a revolver in his waistband. The man told Von Hoffburg to open the cash register and kept telling her to hurry up. She handed him $45.00. As he was about to go out the door, he told her to give him three lottery tickets, which she did. At trial, the victim identified defendant in court as the robber. Additionally, a videotape from one of two surveillance cameras in the store was played for the jury. Von Hoffburg testified that the videotape accurately reflected what happened to her at the Texaco Station. Baton Rouge City Police Officer William D. Denicola testified that he knows defendant and that he recognized defendant on the videotape.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment, defendant contends the court erred by denying his motion to quash for misjoinder and, alternatively, his motion to sever. Defendant asserts "[t]he effect of joinder in this case was to allow the State to strengthen four weak cases by having before the jury evidence of other crimes which would not have been admissible if the offenses had been tried separately." Defendant also claims that his conviction on count one (on the basis of the alleged insufficiency of the circumstantial evidence presented) strongly indicated the jury made an improper inference of his disposition to commit the instant crimes and used the evidence from the other three crimes in finding him guilty on count one. In conclusion, defendant *713 states that the prejudicial effect of joinder demands a severance of the instant offenses for separate trials.
La.C.Cr.P. art. 493 allows joinder of two or more offenses if the offenses are of the "same or similar character" and are triable by the same mode of trial. The offenses at issue in this case, three armed robberies and a first degree robbery, are of a similar character and are triable by the same mode of trial (a jury composed of twelve jurors, ten of whom must concur to render a verdict). See La.C.Cr.P. art. 782. Thus, joinder of these robbery counts in a single bill of information was proper. See State v. Gaines, 633 So.2d 293, 297 (La.App. 1st Cir.1993), writ denied, 93-3164 (La. 3/11/94), 634 So.2d 839.
Proper joinder in the bill of information, however, does not complete the inquiry. A defendant properly charged with multiple counts in a single bill may request a severance of the offenses for trial. Under La.C.Cr.P. art. 495.1, the court may order separate trials, or grant other relief, whenever it appears that the defendant or the state is prejudiced by the joinder. State v. Horton, 458 So.2d 445, 446 (La.1984). In ruling on a motion for severance, the trial court should consider a variety of factors in determining whether or not prejudice may result from the joinder: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and the evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile. State v. Gaines, 633 So.2d at 297. A severance need not be granted if the prejudice can effectively be avoided by other safeguards. State v. Celestine, 452 So.2d 676, 680 (La.1984). In many instances, the trial judge can mitigate any prejudice resulting from joinder of offenses by providing clear instructions to the jury. The state can further curtail any prejudice with an orderly presentation of evidence. State v. Horton, 458 So.2d at 447.
A motion for severance is addressed to the sound discretion of the trial court, and its ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Christy, 593 So.2d 1322, 1325 (La.App. 1st Cir.1991). A defendant in any case bears a heavy burden of proof when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual, rather than conclusory, allegations are required. Evidence of a crime other than the one charged, which may not, for some reason, be admissible under Prieur[1] in a separate trial of that charge, does not prevent the joinder and single trial of the charge of multiple crimes, if the joinder of the crimes is otherwise permissible. State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1019, cert. denied, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
Reviewing the trial court's charge to the jury in the instant case, there can be no doubt that the jury was aware that defendant was charged with four separate offenses, each requiring a separate verdict. The jury was given four separate verdict forms (one for each count). Additionally, the court specifically instructed the jury that each count was for a separate and distinct crime and that the evidence of one count could not be used in determining defendant's guilt of another count. The facts of the crimes were relatively simple, and the evidence of each was "compartmentalized" and not confused.
Therefore, we conclude that defendant was not prejudiced by the joinder of the offenses for trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to quash or, alternatively, to sever.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment, defendant contends the evidence was insufficient to convict him of the September 9, 1993, armed robbery of L.B. Mize charged in count one. Defendant argues that the fingerprint evidence introduced *714 by the state was the only evidence that "tended to directly connect" him to the commission of this offense. Defendant points out that the victim was unable to identify him as the perpetrator. He asserts that the single fingerprint from the box of bags does not exclude every reasonable hypothesis of innocence and that it is very reasonable that he may have been in the store as a customer and picked up the box of bags at that time.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under La.C.Cr.P. art. 821.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)[2], requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged and defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See State v. Brown, 594 So.2d 372, 384 (La.App. 1st Cir.1991), writ denied, 596 So.2d 552 (1992).
When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
A defendant's fingerprint on an object associated with a crime is direct evidence that the defendant touched the object at some time and is circumstantial evidence that he touched it at the time of the offense. State v. Johnson, 598 So.2d 1152, 1157 (La. App. 1st Cir.), writ denied, 600 So.2d 676 (1992). Thus, when the state uses such fingerprint evidence of guilt, the state's evidence must exclude any reasonable hypothesis that the print identified as that of the accused was impressed at some time other than that of the crime. State v. Thompson, 597 So.2d 43, 45 (La.App. 1st Cir.), writ denied, 600 So.2d 661 (1992). See also State v. Davenport, 445 So.2d 1190, 1197 (La.1984).
Defendant contends that he may have touched the box of bags on which his left thumbprint was impressed at a time other than the robbery. However, Mize's testimony reveals that, after he pointed out to the robber where the boxes of garbage bags were, he saw the robber pick up one of them. Mize further testified that, when the police arrived to investigate his report of the robbery, they collected the package from which the robber had removed the bag.
Mize testified that the perpetrator was armed with a revolver. After the perpetrator removed one of the bags from the box of trash bags, the perpetrator told him to put the cigarettes and the money in the bag. Mize complied. After the robbery, a policeman came to Mize's home and showed him a photo lineup. Although Mize was unable to identify the perpetrator from the lineup or in court at the trial, he stated that there were two pictures in the lineup of individuals who "looked close alike."
Sergeant Lee Rice of the East Baton Rouge Parish Sheriff's Office testified that he prepared State Exhibit S-3, a photo lineup, which he displayed to Mize on September 21. Sgt. Rice stated that Mize failed to make *715 an identification from the lineup but that Mize did comment that the individual depicted in the photograph labeled number two closely resembled the robber. Sgt. Rice further stated that the person depicted in that photograph is defendant.
Corporal Brent Callender of the East Baton Rouge Parish Sheriff's Office investigated the count one robbery and interviewed the victim. He arrived at the crime scene within minutes of the commission of the crime. Although Mize referred to the box of bags as a box of garbage bags, Callender stated that the victim told him the robber had grabbed a box of Glad trash bags and had taken one of the bags from the box. Callender retrieved the box but did not place it in evidence, choosing instead to merely lift latent prints from it. Callender testified he lifted three latent fingerprints from the Glad trash bag box. He identified State Exhibit S-1 as an envelope containing the three latent lifters on which the prints appear.
Sergeant Annie Michelli of the Baton Rouge City Police Department qualified and was accepted by the trial court as an expert in the area of latent fingerprints. She identified S-1. She compared defendant's known fingerprints to one of the latent prints in S-1 and determined that it matched defendant's left thumbprint.
Viewing all the evidence presented by the state pertaining to the count one offense in the light most favorable to the state, we conclude that any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that the state proved all of the elements of the count one armed robbery and defendant's identity as the perpetrator of that crime. Under the circumstances present in this case, the only reasonable hypothesis to explain the presence of defendant's thumbprint on the box is that he was the individual who robbed Mize. Cf. State v. Johnson, 598 So.2d at 1157. Consequently, defendant's assignment number five is without merit.

ASSIGNMENT OF ERROR NO. SIX:
In this assignment, defendant contends that, although the trial court gave reasons for imposing the sentences, the court did not state for the record that it considered the sentencing guidelines promulgated by the Louisiana Sentencing Commission or even mention the recommended sentencing ranges of the applicable grid cells for the sentences. Citing State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237 (on rehearing), and State v. Matthews, 26,550 (La.App. 2d Cir. 12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La. 6/16/95), 655 So.2d 341 (for the proposition that a trial court must consider the advisory guidelines and state for the record the considerations taken into account and the factual basis for the imposition of the sentence imposed), defendant asserts that, because of the alleged failures by the trial court, this Court is unable to adequately review the sentences for error since it cannot be determined whether or not there was an upward departure from the recommended sentencing ranges under the guidelines and, if so, how much of the deviation is warranted by the instant record.
Defendant was sentenced on April 7, 1995. Therefore, the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission (effective January 1, 1992) were applicable to his sentencing. Prior to its recent amendment, article 894.1(A) of the Code of Criminal Procedure required a trial court to consider those guidelines[3]. Provided the court complied with the requirements of former article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted...." State v. Smith, 93-0402, at p. 3, 639 So.2d at 240 (footnote omitted).
Defendant timely filed a motion to reconsider his sentences. This motion was denied by the trial court.
Armed robbery is punishable by imprisonment at hard labor for a minimum of five years and a maximum of ninety-nine years, *716 without benefit of parole, probation or suspension of sentence; first degree robbery carries a penalty of a minimum of three years and a maximum of forty years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. La.R.S. 14:64 & 64.1. Herein, the court imposed a sentence of thirty years at hard labor for each of the three armed robberies and twenty years at hard labor for the first degree robbery. The court imposed all four sentences without benefit of parole, probation or suspension of sentence and ordered that the sentences for armed robbery run concurrently with each other and that the sentence for the first degree robbery run consecutively to the armed robbery sentences.
In the instant case, the trial court ordered and received a presentence investigation report (PSI). The PSI included a sentencing guidelines report reflecting that, under the Commission's advisory sentencing guidelines, the applicable sentencing range of incarceration for each of the armed robberies was 330-360 months provided in grid cell 1A and for the first degree robbery 210-240 months provided in grid cell 2A. At the beginning of the sentencing hearing, the court further stated it had reviewed the PSI. The PSI noted defendant had seven prior felony convictions and recommended imposition of maximum sentences.
Notwithstanding defendant's assertions to the contrary, we find the court did consider the Commission's advisory guidelines when it considered the PSI, because the calculations under those guidelines were contained therein. Furthermore, it is apparent from the court's comments that the court not only considered the guidelines before imposing the sentences but also adequately stated the considerations taken into account and the factual bases for the sentences. Thus, we are limited to a review of the sentences for constitutional excessiveness without regard to whether the trial court employed or deviated from the guidelines. See Smith, 93-0402, at p. 3, 639 So.2d at 240.
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In imposing the instant sentences, the trial court relied heavily on the contents of the PSI, which detailed defendant's extensive criminal history over which he had accumulated seven prior felony convictions. Considering the entire record before us, we cannot say the trial court abused its discretion in imposing the instant sentences for this obviously hardened, unrepentant, career offender, particularly considering the extreme seriousness of the instant offenses and the inherent dangers posed to public safety and human life from the commission of the instant offenses.
This assignment lacks merit.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] State v. Prieur, 277 So.2d 126 (La.1973).
[2] Defendant concedes that the evidence for his other three convictions met the Jackson v. Virginia, test for constitutional sufficiency.
[3] Article 894.1 was amended by 1995 La.Acts, No. 942, § 1 (effective August 15, 1995).