585 So.2d 591 (1991)
STATE of Louisiana
v.
Mark D. PITTMAN.
Nos. 91-KA-128, 91-KA-129.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1991.
Writ Denied October 11, 1991.
*593 Bruce G. Whittaker, IDB Staff Appellate Counsel, Gretna, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for state-appellee.
Before DUFRESNE and BOWES, JJ., and FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
Mark D. Pittman was charged on May 16, 1990, with possession of cocaine (LSA-R.S. 40:967), one count of resisting arrest (LSA-R.S. 14:108) and two counts of battery on a police officer (LSA-R.S. 14:34.2). After due proceedings in the trial court the defendant filed a motion to suppress, which was denied on September 5, 1990 after a hearing. On November 11, 1990 he pleaded guilty to all the charges. The plea was entered pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving the defendant's right to appeal the ruling on the motion to suppress.
Following his plea, the defendant was sentenced to three years at hard labor on the possession of cocaine charge, which was to run concurrent with other sentences (including a possible sentence following a pending hearing on revocation of the defendant's probation). He was also sentenced to six months imprisonment on each of the remaining three counts. Those sentences were ordered to run concurrently with each other and the possession-of-cocaine sentence. The defendant was given credit for time served.
He now appeals the judgment denying his motion to suppress evidence and an oral inculpatory statement.

FACTS
The testimony revealed that on April 28, 1990 at approximately 11:00 p.m., members of the Jefferson Parish Sheriff's Office were assisting the Narcotics Task Force of the Kenner Police Department in an area of Kenner notorious for narcotic sales and trafficking. While cruising on Decatur Street, two Sheriff's Office cars and two Kenner Police cars approached an apartment complex in the 200 block known for numerous narcotics transactions. The officers had been informed by Kenner detectives that the drug dealers kept armed guards posted nearby to watch for police activity.
Lieutenant David Bujol and his partner, as part of this patrol, were driving ahead of the other cars on Third Street preparing to turn onto Decatur Street, when Bujol observed a black male pedestrian (later identified as the defendant) turn the corner and stop at Decatur and Third Streets. Lt. Bujol stopped his vehicle at that location to see where the pedestrian was going and allowed the other units to pass by. Lt. Bujol was attempting to determine whether he was one of the look-outs or armed guards the officers had been told were posted at the complex.
Neither Lt. Bujol nor his partner exited the vehicle. As soon as the other units passed their car, the pedestrian began to *594 run to the east side of the complex and then toward the river levee. Lt. Bujol began pursuit and advised the other units he was chasing a black male dressed in a white shirt and blue jeans.
Sergeant Henry Saacks and his partner, Deputy Dwayne Scheuermann, picked up the pursuit. Sgt. Saacks got out of his car to pursue the fleeing subject and ran through an empty lot, attempting to cut off the suspect's path. In doing so, Sgt. Saacks ran behind the apartment complex, where he observed the suspect fleeing toward the river levee. As the suspect rounded the corner of the complex, Sgt. Saacks saw him drop a small match box on the ground. Sgt. Saacks retrieved the box as he continued the pursuit, assuming there was contraband in it because of his past experience and the area's reputation.
The suspect went over the levee into a wooded batture area and Sgt. Saacks lost sight of him. Several of the police officers converged on the levee and a search ensued by Sgt. Saacks and Dep. Scheuermann. While the two officers walked along the levee looking for defendant, Sgt. Saacks opened the match box and observed two off-white rock-like objects, which his past experience led him to assume was cocaine.
Approximately ten minutes later, Sgt. Saacks and Dep. Scheuermann saw the defendant lying down in approximately two feet of water in the river with only his head exposed. He was ordered to come out twice and twice he refused to move. When the defendant failed to respond, the officer waded into the water and attempted to handcuff the defendant, who resisted and had to be physically subdued.
Prior to bringing the defendant back to the levee, and while he and the two officers were standing in the water, Sgt. Saacks advised the defendant of his rights. As the three began moving back to the levee, the officers testified the defendant stated he understood his rights and, in response to Sgt. Saacks' questioning, he said the reason he ran was because he had two "rocks" on him and he was on probation.
The defendant produced the testimony of his sister, Jackie Curtis, and a friend, Brian Young. They both testified that the defendant was standing with them and another man talking and laughing when the police convoy appeared. Everyone but Ms. Curtis started running before the police cars came to a stop because they believed the police were "coming to mess with us." The witnesses stated the police only chased the defendant, although the two other men ran as well.
After listening to the testimony, the trial judge denied the motion to suppress.
On appeal the defendant first contends the trial judge erred in denying the motion to suppress the contraband. The defendant contends his prior behavior did not constitute facts and circumstances sufficient to authorize an infringement upon his right to be left alone. Thus, he asserts, the abandoned contraband was the result of an illegal stop. The defendant secondly contends his inculpatory statement should have been suppressed because the State failed to prove beyond a reasonable doubt that the interrogating officers advised the defendant of his Miranda rights. Cf. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ASSIGNMENT OF ERROR NUMBER ONE
The Louisiana Supreme Court has held that "reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference." State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The court further held that the right to make the investigatory stop must be based upon "reasonable cause to believe ... [the individual detained] has been, is, or is about to be engaged in criminal conduct." Id.
Flight, nervousness, or a startled look at the sight of a police officer is not by itself sufficient to justify an investigatory *595 stop. State v. Belton, supra. However, such conduct may be highly suspicious and maybe one of the factors leading to a finding of reasonable cause. Id.
The Belton court explained that, although both the federal and the state constitutions protect people against unreasonable searches and seizures, the right of law enforcement officers to stop and interrogate a person reasonably suspected of criminal activity is recognized by the Louisiana Code of Criminal Procedure, as well as by both state and federal jurisprudence. The court stated the purpose of the Fourth Amendment to the federal constitution is not to eliminate all contact between the police and the citizenry and police do not need probable cause to arrest or reasonable cause to detain every time they attempt to talk with or approach a citizen. The Fourth Amendment protection does not arise as long as the individual may disregard the encounter and walk away. State v. Belton, supra.
When an illegal stop occurs, the property abandoned or disposed of cannot be legally seized. State v. Belton, supra. However, if the property is abandoned without a "prior unlawful intrusion into a citizen's right to be free from governmental interference, then such property may be lawfully seized." Id., at 1199.
To constitute a seizure of a person under the Fourth Amendment, there must be the application of physical force, however slight, or submission to a police officer's show of authority to restrain the person's liberty. California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690, decided April 23, 1991. In that case, crack cocaine abandoned by the defendant while he was running was found to be legally seized because the defendant was neither physically restrained nor did he submit to the officer's show of authority.
In State v. Simon, 524 So.2d 250 (La. App. 5 Cir. 1988), a case similar to the one before us, the police officers were patrolling a neighborhood known for its high incidence of drug crimes. They observed the defendant knocking on an apartment door. When the defendant saw the officers he turned and walked away; one of the officers followed him. While walking away, defendant dropped a clear plastic bag which was picked up by the officers following. He and his partner observed a white powdery substance in the bag which they believed to be cocaine. The defendant was detained thereafter and, when the substance was determined to be cocaine, he was arrested.
In Simon, the court noted that the officers neither addressed the defendant nor touched him and he was free to walk away when the officers appeared on the scene. Thus, the officers' actions prior to retrieval of the cocaine did not intrude on the defendant's liberty or privacy. Therefore, the court held the seizure of the contraband was legal.
The same result occurred in State v. Vinet, 576 So.2d 1200 (La.App. 5 Cir.1991). The facts there showed the police approached a group of males who dispersed on seeing the police car approach. One of the males, the defendant, threw a packet into the air as he was leaving. The package was picked up by one of the officers and a field test revealed the presence of cocaine. Vinet was thereafter arrested. Finding no error in the denial of the defendant's motion to suppress, the court noted that while the presence of a police car paralleling a running pedestrian can be intimidating, it does not, standing alone, constitute a seizure.
In the case at bar, the police officers were patrolling in an area notorious for illegal narcotics activity. They were warned to watch for police look-outs and/or armed guards. Although the officers neither spoke to the defendant nor touched him, he fled when he saw them. After the defendant ran, the officers did not call to him to halt or use their sirens. If the appearance of the vehicles could be construed to be a legal show of authority, the defendant did not submit. Thus, we find there was no investigatory stop and no illegal seizure of the defendant. Therefore, we hold the motion to suppress the evidence was properly denied in regard to the cocaine retrieved by the police officers.

*596 ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant contends the inculpatory statement he made after his arrest should have been suppressed. In this regard he asserts the State failed prove beyond a reasonable doubt the arresting officers advised him of his constitutional rights prior to his statement.
A confession or inculpatory statement is not admissible into evidence unless the state proves it was made freely and voluntarily and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(C); State v. Vaccaro, 411 So.2d 415 (La.1982). In addition, the State must establish that the accused who made a confession was first advised of his constitutional rights as set forth in Miranda v. State of Arizona, supra, and that he voluntarily and intelligently waived those rights. State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). See also, State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, Castillo v. Louisiana, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981).
In deciding the admissibility of a confession, the trial judge must consider the totality of the circumstances. State v. Shepherd, 449 So.2d 1120 (La.App. 5 Cir. 1984). His decision in this regard is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Weiland, supra.
In this case, the defendant gave an oral confession. The two officers who arrested the defendant testified his statement was made after he was advised of his rights and in response to police questioning. According to Sgt. Saacks, the defendant verbally indicated he understood his rights. The evidence further indicated that the defendant's condition was unimpaired at the time he made the statement and that he was not coerced or threatened into making a statement.
The testimony of the police officers alone can be sufficient to prove the defendant's statement was freely and voluntarily given. See, e.g., State v. Robinson, 525 So.2d 712 (La.App. 1 Cir.1988), and State v. Washington, 540 So.2d 502 (La. App. 1 Cir.1989). An express waiver of Miranda rights is not necessary to establish the admissibility of the statements into evidence. State v. Patterson, 464 So.2d 811 (La.App. 5 Cir.1985).
The trial judge here weighed the credibility of the witnesses and determined the statement was freely and voluntarily given. After our review, we find no error in his ruling.

ERROR PATENT
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Where the defendant has entered a plea of guilty, the issue of whether the defendant was properly "Boykinized" should also be included in an error patent review. State v. Godejohn, 425 So.2d 750 (La.1983).
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) the United States Supreme Court emphasized three federal constitutional rights which are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront *597 one's accusers. The Court then announced its unwillingness to presume waiver of these rights from a silent record. Boykin was adopted by the Louisiana Supreme Court in State ex rel. Jackson v. Henderson, 255 So.2d 85 (La.1971) and held to apply to all felony pleas of guilty subsequent to December 8, 1971. State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972).
Here, the accused was advised by the trial judge of his right to trial by jury, his right to appeal and his right to confront his accusers. He was not personally informed of his right against self-incrimination by the trial judge. However, he signed a waiver of rights form which included that statement and the record shows he was well aware of his constitutional rights and that his attorney specifically advised him of his constitutional rights. Thus, the record as a whole shows he was properly "Boykinized". See State v. Kelly, 524 So.2d 123 (La.App. 4 Cir.1988), writ denied, 531 So.2d 262 (La.1988).
The record also shows the trial judge committed a sentencing error by ordering defendant's sentence to three years at hard labor to be served concurrently "with the time given on the revocation of probation in the other division." (Emphasis added).
In a revocation proceeding only the judge who initially granted the suspension of the prior sentence and probation is entitled to determine whether the defendant will serve prior and subsequent sentences concurrently or consecutively. LSA-C.Cr.P. art. 901(C)(2). State v. Ester, 436 So.2d 543 (La.1983); State v. Triggs, 479 So.2d 2 (La.App. 5 Cir.1985). Thus, the trial judge here was without authority to order the three-year sentence to be served concurrently with the sentences in the revocation proceeding. However, removing the provision would subject defendant to a potentially more onerous sentence. In such a case, this Court cannot correct the error on its own motion because this may be considered an illegally lenient sentence of which the prosecution did not seek review. State v. Fraser, 484 So.2d 122 (La. 1986).
Two other errors are noted in our review. The first is that the transcript does not reflect credit for time served, whereas the minute entries and the commitments do state defendant is given credit for time served. Generally, where there are discrepancies between the transcript and minute entry the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983); State v. Lockett, 542 So.2d 670 (La.App. 5 Cir.1989). Since credit for time served is mandatory under LSA-C.Cr.P. art. 880, defendant must be given credit for time served pursuant to the commitment.
Finally, we note the transcript reflects the trial judge sentenced defendant to six months on each of the three counts involving resisting an officer and battery on a police officer, but the sentences are not reflected in the acknowledgement of rights form. While we recognize the omission, we also find it to be of no consequence because the transcript provides for the six-month sentences on each count.

DECREE
For the foregoing reasons, the defendant's convictions and sentences are hereby affirmed.
AFFIRMED.