752 So.2d 244 (1999)
STATE of Louisiana
v.
Jerome SPOTVILLE.
No. 99-KA-719.
Court of Appeal of Louisiana, Fifth Circuit.
December 21, 1999.
*245 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Robert Odinet, Spiro Latsis, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and SUSAN M. CHEHARDY.
GOTHARD, Judge.
Jerome Spotville, and co-defendant Lisa Gatora[1], were charged by bill of information with possession of cocaine, in violation of LSA-R.S. 40:967 C. Defendant, Spotville, pled not guilty, and filed various pretrial motions, including a motion to suppress the physical evidence, which was denied by the trial court. In due course, a trial was begun. On the second day of the trial, defendant withdrew his plea and entered a plea of guilty as charged, reserving his right to appeal the denial of the motion to suppress the evidence pursuant to State v. Crosby, 338 So.2d 584 (La.1976). After defendant waived all delays, he was sentenced to serve five years at hard labor.
On the same day, the state filed an habitual offender bill of information alleging Spotville was a double felony offender. Later the same day, defendant admitted the allegations in the multiple bill and was found to be a second felony offender. The *246 trial court vacated the original sentence and imposed an enhanced sentence of five years at hard labor without benefit of parole, probation or suspension of sentence. The trial court further ordered that the sentence be served concurrent with all other sentences defendant is currently serving, and with any sentence he may receive in the future for probation revocation.
Defendant filed a timely motion for appeal which was granted by the trial court. Defendant also filed a motion to reconsider sentence, which was denied.

FACTS
Similar evidence regarding the seizure of cocaine was presented at the suppression hearing and at the trial. The evidence presented at trial clarified the testimony presented by Officer William Cambre, the only officer who testified at the suppression hearing. The following testimony was adduced.
Officer Cambre testified that on March 12, 1998 he was involved in an undercover narcotics investigation at a motel located in Gretna, Louisiana, which was known for its high narcotics activity. He received numerous telephone complaints about that location, and had previously conducted surveillance of the motel which led to arrests and convictions. The motel is not family-oriented; it is a place where narcotics are sold, and where a number of people use the rooms to smoke crack cocaine.
Officer Cambre, Detective Claude Koenig, and Detective Russell Lloyd met around 10:00 p.m. in order to plan their method for handling the complaints. Approximately ten minutes later, they set up the surveillance in a vehicle located near the back of the motel. Detective Cambre noticed individuals going in and out of the rooms. His investigation was directed to Room 133, since he had received specific complaints about that room. The area was clearly lit and Officer Cambre could see without the aid of binoculars.
While parked at the location in an unmarked vehicle, Officer Cambre was approached by a confidential informant who had proved to be reliable in the past, offering information which lead to arrests. The informant knew the officer and the vehicles used by the officer "very well". The informant told Officer Cambre that a black male in Room 133 was in possession of crack cocaine. Officer Cambre did not question the informant as to any further details. However, based on the informant's past record of providing reliable information, the officer had no reason to believe the statement was inaccurate. Although the informant did not provide a time frame, the officer did not believe he was referring to a previous week because the officer had received complaints about narcotics activity in that room. Thus, the informant verified the complaints of narcotics activity in the room. At approximately 10:30 p.m. the officers observed two individuals exit the room. The officers had seen these same two individuals enter the room as well.
Officer Cambre observed a black male and a white female exit the room and walk away. He also testified that at the time the individuals entered the room, he did not observe any criminal activity on their part. He did not know these individuals and had no reason to believe they were dangerous. He did not recall that they acted nervously at first. However, given the circumstances, he suspected the black male from Room 133 to be in possession of cocaine. The door to the room remained open when the individuals exited. The opened door was not unusual under these circumstances since the officers had observed many individuals going in and out of the rooms.
When the door opened, the officers were approximately one-hundred to one-hundred and fifty feet away. They drove the vehicle approximately eighty-five to ninety feet, at which time the individuals were approximately fifteen feet from the door in an alleyway. The officers stopped both *247 individuals because they did not want anyone in possession of cocaine to leave the area.
Officer Cambre maintained that he did not have probable cause to arrest defendant as he exited the room, but that he did have justification to conduct an investigation to determine whether drug activity was occurring. Officer Cambre requested that they stop, and they complied with his request. He did not physically detain them at this point.
When they reached the individuals, the officers immediately identified themselves as police officers, and informed the individuals of their investigation regarding complaints about narcotics in the area. Initially, Officer Cambre was not concerned about his safety; the individuals did not attempt to place their hands in their pockets or attempt to conceal their bodies from view. Accordingly, he did not perform a pat-down search. However, he explained that he is always concerned about concealed weapons in such circumstances.
Officer Cambre explained that Detective Koenig stopped defendant, while he stopped the co-defendant, the white female. The officers obtained their identification while Detective Lloyd went to the room for safety reasons since the officers did not know whether there were any people or guns remaining in the room.
As Officer Cambre explained their purpose, defendant began yelling loudly and cursing for no apparent reason. This behavior alarmed the officer and alerted his suspicion that something was "wrong". Defendant's behavior caused the officer to become concerned for his safety since the behavior was described as being "out of the ordinary". At the time defendant began yelling, screaming, and cursing, the officers did not know whether defendant would begin fighting. After defendant began yelling, Detective Koenig placed defendant against the wall of the motel. Officer Cambre stated that defendant "kind of pulled away and went to run". As he did so, a clear plastic bag, containing a white substance, fell from his waistband, down his loose-fitting, baggy pants, and onto the ground.
Officer Cambre viewed the bag as soon as it fell. From his numerous investigations in narcotics, he noted, "[i]t was clearly packets as I've seen cocaine, crack cocaine packaged", although at that point he did not know for certain that it was cocaine. When the package dropped to the ground, the co-defendant reached over and picked it up and attempted to run. She ran approximately four steps before Officer Cambre stopped her and removed the package from her hand. The officers detained both individuals and placed them against the wall. A field test of the bag's contents, conducted on the scene, revealed the presence of cocaine.
Officer Cambre denied defendant was placed under arrest when he was placed against the wall. Instead, he stated defendant was placed against the wall in the course of events which happened very quickly, in which the defendant began to scream, curse, and attempt to flee.
Detective Koenig offered testimony at trial which was consistent with that of Officer Cambre. Detective Koenig explained that when Officer Cambre attempted to tell the individuals the officers' purpose for being there, defendant's actions were "pretty outrageous". He stated that defendant shouted obscenities and "made a break". When defendant engaged in these behaviors, Detective Koenig grabbed him and placed him against a wall. In the scuffle, a bag fell to the ground.
Detective Lloyd stated he was not present during the encounter, and did not observe the incident.
On cross-examination during trial, Officer Cambre was referred to Detective Lloyd's arrest report on defendant. He stated that although the report recites that the officers observed defendant exiting the room with an unknown substance in his *248 hand, that statement was inaccurate. He explained that he (Officer Cambre) related the information regarding the incident to Detective Lloyd, who in turn wrote the report. He attributed the discrepancy to "a breakdown in communication". Officer Cambre and the two detectives specifically denied observing the defendant with something in his hand. Detective Lloyd testified his report was based on his interpretation of the information given to him by Officer Cambre.
Defendant, a former police officer, testified at the suppression hearing, relating a different version of the events. He stated that he and the co-defendant, Lisa Gatora, were present in the room, along with Alton Majore, a white male, for approximately thirty minutes when the co-defendant left to go to a store. When Lisa did not return after ten to fifteen minutes, he began to worry. He looked out of the window, saw a truck pulling up, and exited the room. When defendant walked out of the room, one policeman exited the vehicle, while Officer Cambre remained in the truck. The policeman told defendant to place his hands against the wall. Defendant complied and the officer conducted a pat-down search, and handcuffed the defendant. The officer found nothing on defendant. Afterwards, Officer Cambre held defendant while the other police officer went to the room, where the door was opened.
At that point, the co-defendant walked up. Officer Cambre told her to leave, but when she attempted to leave, the officer grabbed her by her hair, and threw her to the ground. He placed her in handcuffs while she was on the ground, and took both of them to the room.
After they entered the room, two officers brought defendant to the bathroom, and questioned him. Afterwards, Detective Lloyd left and Detective Koenig began beating defendant and subjecting him to a strip search. The defendant maintains that no drugs were found in the search.
The beating stopped when a fourth policeman, who recognized defendant as a former police officer, intervened. Defendant testified that, at this point, Detective Koenig left, and the remaining officers asked defendant's help in conducting drug busts. Defendant agreed.
Defendant denied being in possession of crack cocaine, but admitted there were drugs in the room. He also admitted he had been smoking crack cocaine in the room.
The matter presented for our review is whether the trial court was correct in denying the motion to suppress the evidence based on the above facts.
In denying the motion to suppress, the trial judge reasoned that the officers had a right to investigate the complaints of criminal activity in Room 133. They had information from a reliable informant that drugs were in Room 133. When the officers saw the two individuals exit the room, it was reasonable and good police work to approach these individuals. She considered the case to turn on the encounter when defendant created a scene and started cursing. The trial judge concluded the officers had a right at that time to detain defendant. She stated, "[B]ecause I've ruled that the police had a right to approach him and thereafter because of his actions a right to detain him, the property that fell from his pocket was properly seized at that point."
The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006, (La. App. 5 Cir. 3/30/99), 735 So.2d 62, 73. The trial judge's reasons reflect she attached greater weight to the testimony presented by Officer Cambre than to defendant's version of the facts. The trial judge has broad discretion in assessing the credibility of witnesses. State v. Parkerson, 415 *249 So.2d 187, 189 (La.1982)[2], (citing State v. Collins, 328 So.2d 674 (La.1976)). From the record, we find no abuse of that discretion.
LSA-C.Cr.P. article 215.1 provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The police cannot approach citizens under circumstances that make it seem that some form of detention is imminent unless they have probable cause to arrest the individual or reasonable grounds to detain the individual under Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-1885, 20 L.Ed.2d 889 (1968). State v. Saia, 302 So.2d 869, 873 (La.1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). As stated in State v. Sims, 350 So.2d 1189, 1190 (La.1977), "It is now well settled that before a police officer may make a valid investigatory stop he must at least have reasonable cause to suspect the one stopped of past, present or imminent criminal conduct."
The crucial inquiry herein is whether, at the time the packet dropped from defendant's pants, the police officers had effected an unlawful detention.
Defendant, relying on State v. Mendoza, 376 So.2d 139, 142 (La.1979), argues that the officers were not entitled to arrest defendant based on a suspicion that he was involved in criminal acts. In Mendoza, defendant was charged with possession of cocaine. The Louisiana Supreme Court concluded that the officers lacked probable cause to arrest defendant. The officers responded to a tip from a confidential informant who had not previously provided them with information leading to a conviction or an arrest. The informant told them defendant supplied marijuana out of a toolbox in the back of defendant's pickup truck; however, the informant did not state he had seen the marijuana. Prior to searching the truck, the officers' actions indicated they intended to impose an extended restraint on defendant's liberty. The search occurred after the officers imposed a prolonged restraint on defendant. The only justification offered by the state was that the search was incident to a lawful arrest.
The state argues that in accordance with State v. Short, 95-742, (La.App. 5 Cir. 1/30/96), 668 So.2d 1240, 1245, an informant's tip and previous experience can provide reasonable suspicion to support an investigatory stop. In Short, the officers had specific information from a reliable confidential informant that defendant and a specifically named woman were trafficking heroin out of Room 53 at an identified motel. The officers then verified the information given to them by conducting surveillance of the motel room, as well as the vehicle in which defendant was a passenger. This court found the officers had reasonable suspicion to make an investigatory stop.
Further, the state argues that reasonable suspicion to execute an investigatory stop existed since the area was known for high narcotics activity, the officers had specific information from unidentified sources regarding illegal drug activity in Room 133, they observed a black male and a white female enter the room, and a *250 reliable confidential informant told the officer a black male was in possession of cocaine in that room. The state argues the informant's tip confirmed the surveillance. We agree.
The initial encounter is based on reasonable cause for an investigatory detention derived from Officer Cambre's receipt of complaints regarding the motel and Room 133, his past history of arrests and convictions in connection with the motel, a known location for drug activity, and the informant's tip corroborating information regarding Room 133. The confidential informant provided further information that he saw a black male from that room who was in possession of cocaine. That information was corroborated by the officers who observed a black male exit that specific room.
Under LSA-C.Cr.P. article 215.1A and the above-cited jurisprudence, we find the officers had reasonable cause for an investigatory detention. Hence, we conclude that when the officers first encountered defendant, they had reasonable cause to believe that defendant, who was seen exiting the specific room identified as having drug activity, and who matched the description given by the informant, was engaged in criminal activity.
Defendant further argues that he was secured and subject to an unjustified extended restraint when he was placed against a wall. According to defendant, at that point the officers only had a suspicion of criminal acts rather than probable cause to justify the restraint. Thus, since the alleged abandoned evidence was seized as a result of the restraint, it must be suppressed. We do not find this argument convincing.
Defendant was placed against a wall and handcuffed after he began creating a scene, screaming obscenities and behaving in an "outrageous" manner. The behavior alarmed Officer Cambre, who could find no explanation for the sudden actions. He was uncertain as to whether defendant would begin fighting. Thus, safety concerns, which had not been an issue before the sudden behavior, now became an issue. An officer may conduct a limited pat-down frisk of defendant's outer clothing for weapons if he reasonably suspects that he is in danger under Article 215.1B. Thus, the officer at that point could have conducted a pat-down frisk of defendant.
However, in this instance, although the officers had authority to conduct a pat-down frisk for safety reasons, none was conducted because a struggle ensued which resulted in defendant's being placed against a wall and handcuffed.
In State v. Solomon, 93-1199, 634 So.2d 1330, 1331, 1332 (La.App. 3 Cir. 3/2/94), the officers initially approached defendant, who was in a high crime area. Defendant had his hand in his pocket. The officers approached defendant in order to conduct an investigatory stop. Defendant fled and the officers followed him. He fell, and a struggle ensued. After defendant struggled violently the officer handcuffed him for safety reasons. The court held defendant was not under arrest at that time because, "It is axiomatic that officers making a valid `Terry' investigatory stop can use reasonable force, under the circumstances, to effectuate the stop." Further, the court reasoned:
A permissible stop, by definition, is a restraint on the suspect's freedom to leave, which can only be accomplished by the application of some measure of police authority. If Solomon had not resisted violently, the handcuffs would not have been necessary.
Similarly, in State v. Gray, 98-47, 738 So.2d 668, 669, (La.App. 5 Cir. 6/1/99), this court under the circumstances of that case, held that handcuffing defendant did not rise to the level of an arrest. Instead, the seizure was authorized pursuant to Article 215.1B for the purpose of making a limited weapons' frisk.
In Gray, defendant was personally escorted by the officer to the police vehicle *251 and handcuffed. Prior to this time, the officer was investigating four juvenile suspects whom he suspected of violating a curfew ordinance. He asked the four juveniles to approach the vehicle and remove their hands from their pockets. Defendant refused to comply despite repeated requests by the officer. This refusal caused the officer to fear for his safety. This court determined that under the facts presented in that case, the officer, who was alone at night in the presence of these males, was in a threatening situation.
This court explained that a "reasonably prudent person would be warranted in believing that his safety was in danger". The court concluded that a limited search for weapons was justified. Id. 98-47 at 669.
Although the state characterizes the dropping of the package as abandonment, there is no indication in the record that the package was intentionally dropped by defendant. However, even if it were not intentionally dropped by defendant for purposes of abandonment, the contents of the package were in plain view and were clearly identified by the officer as similar to crack cocaine packages. Because we have determined the officer was lawfully in a position from which to view the object, which had an immediately apparent incriminating nature, we find the cocaine was lawfully seized without a warrant. See, State v. Gentras, 98-1095, (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 116. Thus, at this point, the reasonable suspicion for an investigation developed into probable cause for an arrest. See, Gentras, 98-1095 at 6, 733 So.2d at 116-117.
For the foregoing reasons, we find no error in the trial court's decision to deny the defendant's motion to suppress.
We have conducted a review of the record for errors patent and have found several errors in the sentencing on the multiple offender bill of information. Initially we note that the trial judge imposed sentence on the multiple bill, to be served concurrently with all other sentences defendant is currently serving, and with any rule to revoke probation for which he may be sentenced in the future. Pursuant to LSA-C.Cr.P. art. 901C(2), the trial judge lacked authority to impose a concurrent sentence with the sentence yet to be imposed on probation revocation. Article 901A provides that the court may revoke probation when defendant commits a subsequent felony. Revocation is not mandatory. State v. Kendrick, 96-1636, (La.App. 3 Cir. 6/25/97), 699 So.2d 424, 428, writ denied, 98-2159 (La.12/18/98), 731 So.2d 280. Furthermore, at the time of the sentencing on the multiple offender bill, no revocation sentence had yet been imposed.
LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Article 883 authorizes the court to order that a sentence of imprisonment be served concurrently. However, Article 901C(2) provides:
C. In cases of revocation provided for in this Article:
(2) When the new conviction is a Louisiana conviction, the sentence shall run consecutively with the sentence for the new conviction, unless the court originally imposing the suspension or probation specifically orders that said sentences are to be served concurrently, in which case the court minutes shall reflect the *252 date from which the sentences are to run concurrently.
The Louisiana Supreme Court, in interpreting the above provision, has held:
In the event of revocation on th[e] prior offense, however, only the court originally granting the suspension of sentence and probation may determine whether defendant will serve the sentences concurrently or consecutively.
State v. Donnaway, 410 So.2d 231, 232 (La.1982).
This court considered such error as an error patent in State v. Pittman, 585 So.2d 591, 597 (La.App. 5 Cir.), writ denied, 586 So.2d 545 (La.1991). The Pittman court explained:
Thus, the trial judge here was without authority to order the three-year sentence to be served concurrently with the sentences in the revocation proceeding. However, removing the provision would subject defendant to a potentially more onerous sentence. In such a case, this Court cannot correct the error on its own motion because this may be considered an illegally lenient sentence of which the prosecution did not seek review. State v. Fraser, 484 So.2d 122 (La.1986).
585 So.2d at 597.
The Pittman rationale is applicable herein since the trial judge imposed a concurrent sentence with that of possible probation revocation and the state has not sought review of the illegally lenient sentence.
However, we find other errors which require vacation of the sentence. The defendant admitted he was the same person who was convicted of issuing worthless checks, as alleged in the multiple bill, before the trial judge informed him of the right to remain silent. See, LSA-R.S. 15:529.1D(1)(a) and (3). In State v. Riggins, 97-1194, (La.App. 5 Cir. 8/25/98), 718 So.2d 569, 572, writ denied, 98-2520 (La.1/15/99), 736 So.2d 206, this court noted:
... defendant was not properly advised of his right to remain silent before he stipulated that he was a second felony offender. Our jurisprudence has consistently held that in a habitual offender proceeding, a trial court must advise a defendant of his rights to a hearing, at which the State is required to prove the allegation of the multiple bill, and of the right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983).
Further, we note that defendant was not informed, during the plea colloquy or through the waiver form, of an enhanced penalty as required by LSA-C.Cr.P. art. 556.1E. Defendant pled guilty to possession of cocaine. He was not informed of the enhancement of a controlled dangerous substance offense under the Uniform Controlled Dangerous Substance Law. LSA-R.S. 40:982.
For the foregoing reasons, we affirm the conviction and vacate the enhanced sentence on the multiple offender bill of information and remand the matter to the trial court for rehearing and re-sentencing.
CONVICTION AFFIRMED, SENTENCE VACATED, MATTER REMANDED.
NOTES
[1] The co-defendant is not a party to this appeal.
[2] Rehearing was granted in part to correct an unrelated typographical error. 415 So.2d at 189.