381 So.2d 485 (1980)
STATE of Louisiana
v.
Toxi JACKSON and Harold Sneed.
No. 65684.
Supreme Court of Louisiana.
March 3, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Marvin Opotowsky, Asst. Dist. Atty., for plaintiff-relator.
Wilfret R. McKee, New Orleans, for defendant-respondent, Harold Sneed.
Frank DeSalvo, Gretna, for defendant-respondent, Toxi Jackson.
CALOGERO, Justice.[*]
The question presented in this case is whether the trial judge erred in suppressing defendant's confession. That ruling came in response to a pre-trial motion by defendants Toxi Jackson and Harold Sneed to suppress a confession made by Toxi Jackson on the grounds that the confession was not free and voluntary.
Defendants Jackson and Sneed are charged with possession of dilaudid with intent to distribute in violation of R.S. 40:967. Neither case has gone to trial on the merits. We granted writs upon application by the state to review the pre-trial ruling.
*486 On July 28, 1978, the New Orleans police stopped a brown Trans Am van driven by Harold Sneed after it crossed the Industrial Canal bridge at Florida Avenue. The police arrested Sneed and a passenger, Sneed's girlfriend Toxi Jackson, and searched the vehicle.[1] The police found a partially burned hand-rolled cigarette that they believed to be marijuana in the ashtray of the van. Later while the police were advising defendants of their rights, Toxi Jackson produced a hand-rolled cigarette from her bra and gave it to the police.
Sneed and Jackson were then taken to the Narcotics Bureau Office of the New Orleans Police Department where a search of Jackson resulted in the discovery of twenty tablets, later identified as dilaudid. Toxi Jackson signed a "waiver" of her Miranda rights at the Narcotics Bureau and agreed to make a statement against defendant Sneed after being assured by the police of "protection" against possible retaliation by Sneed. The police officers told her that they felt certain that they could get her into a federal witness program which would re-locate her, provide her money to live on, and possibly provide her with a new identity. They also told her that anything she said in a statement or any cooperation on her part would be brought to the attention of the district attorney's office and that the district attorney would make a determination concerning the charges with which she was booked.
Toxi Jackson's statement consisted of questions written by one of the police officers and answers written by her. She admitted to holding the pills found on her person, but claimed that she was "stashing" them for Sneed at his request because the police usually didn't search women. When asked why she was making the statement against Sneed she responded: "I'm not going to jail for nothing. It's not my pills. He's the one that's dealing. Not me." When asked if she were promised anything for making the statement, she replied, "That I would be protected. If I didn't get out by Monday. They would. They would consult the D. A. concerning my charge." Those statements are the focus of the principal question in the case, whether Jackson's confession was involuntary because it was influenced by promises, including that of immunity or freedom from prosecution.[2]
The United States Supreme Court has held that confessions obtained by "any direct or implied promises, however slight, [or] by the exertion of any improper influence" is involuntary and inadmissible as a matter of constitutional law. Bram v. United States,[3] 168 U.S. 532, 542-543, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The rationale of Bram is that even slight inducements held out by a person in authority such as a police officer or prosecuting attorney may render a confession involuntary because the person accused would believe that such an authoritative person is credible and in a position to give effect to the inducement. See 3 Wharton's Criminal Law and Procedure, Charles E. Torcia (ed.), 1973, § 682, p. 469. A promise of immunity or freedom from prosecution is a particularly powerful inducement to confess, leading one writer to state that in Louisiana, "immunity from prosecution has always been sufficient to deem a confession made in reliance thereon involuntary." 14 La.L.R. 642, 662 (1954). See also 3 Wharton's Criminal Law and Procedure, supra, § 681 at 466.
*487 In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and "not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." R.S. 15:451. The state has the burden of affirmatively proving that a confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises and must prove beyond a reasonable doubt that a confession was free and voluntary. R.S. 15:451, C.Cr.P. Art. 703(C), State v. Colemen, 369 So.2d 1286 (La.1979); State v. Volk, 369 So.2d 128 (La.1979); State v. Weinberg, 364 So.2d 964 (La.1978).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Gaines, 354 So.2d 548 (La.1978); State v. Mullins, 353 So.2d 243 (La.1977); State v. Webb, 364 So.2d 984 (La.1978).
We conclude that the trial judge, whose conclusions are entitled to great weight, did not err in ruling that the confession was involuntary.
The trial judge's ruling was apparently prompted by two considerations. First, at the very conclusion of the handwritten question and answer statement (or confession) defendant Jackson responded to the question concerning whether she had been promised anything for making the statement: "That I would be protected. If I didn't get out by Monday. They would. They would consult the D. A. concerning my charge."
The second consideration and the one which gives meaning and substance to the foregoing answer and which determines or explains what the witness meant was the testimony of questioning officers O'Neal and Bethay. Officer Bethay testified that defendant feared that she and her family would be harmed if she made any statements against her co-defendant, Sneed. But the officers promised her that she would be protected and that her cooperation would be brought to the attention of the district attorney as quickly as possible. Both officers testified that no specific promise was made either to drop the charges or reduce the charges against her.
Officer O'Neal testified that Jackson was offered protection to be furnished through the Federal Witness Program. He also told her that she could be of great assistance in convicting Sneed; that the conviction of Sneed was the officers' chief concern in the case; that under the Federal Witness Program she would be provided with protection or means of leaving town, and cash; and even more significantly he testified as follows: "We were going to consult the district attorney to see about any potential involved with her testifying against Harold Sneed." O'Neal's answer was responsive to a question asking whether the officers said that they would drop the charges against Jackson or talk to the district attorney about dropping the charges.[4]
*488 Considering the testimony at the motion to suppress and further considering the heavy burden upon the state to prove that the confession was not made under the influence of inducements or promises, we cannot say that the trial judge erred in suppressing the confession. It is not only the logical, but probably the preferred interpretation, for the judge to have concluded that when she wrote (in the confession) that she was promised protection, and if she wasn't out of jail by Monday that the officers would consult the D. A. concerning her charge, that she was referring to Officer O'Neal's minimally inferred promise to speak to the district attorney about using her as a witness against Sneed rather than charging her as a defendant.[5] It is not illogical to so conclude when the officer admitted under oath that he had promised to consult the district attorney to see about any potential involved with her testifying against Sneed, particularly when coupled with the admission that they would attempt to get her into a federal witness program and were fairly certain they would succeed in getting her in that program. It would not be logical for Ms. Jackson to assume that she was going to be treated as a witness protected by the state against retaliation but still be prosecuted as a co-defendant.[6]
There is, of course, a possibility of reading her answer, that the officers would consult the D. A. about her charge if she were not out of jail by Monday as indicating that the officers offered to help her simply with a reduction of bail. But none of the questioning officers so testified at the motion to suppress hearing.[7]
After reviewing the entire record of the transcript of the motion to suppress hearing we do not conclude either that the state *489 bore its burden of proving that the confession was not made under the influence of promises or inducements or that the trial judge abused his discretion in ruling that the confession was involuntary and inadmissible.

DECREE
For the foregoing reasons the ruling of the trial court in granting defendant's motion to suppress is affirmed.
AFFIRMED.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents.
MARCUS, Justice (dissenting).
I do not consider that Harold Sneed has standing to object to the voluntariness of Toxi Jackson's confession. La.Const. art. 1, § 16 states: "No person shall be compelled to give evidence against himself." U.S.Const. amend. 5 provides: "No person ... shall be compelled in any criminal case to be a witness against himself." Neither provision provides that no person shall be compelled to give evidence or to be a witness against others. Rather, the converse is true. A witness can be compelled to give evidence against others unless he properly exercises his privilege against self-incrimination. Moreover, La.Const. art. 1, § 16 does not provide, as does art. 1, § 5, dealing with searches and seizures, that any person adversely affected shall have standing to raise any illegalities. Consequently, the trial judge erred in sustaining defendant Sneed's motion to suppress the confession.
As to defendant Jackson's motion to suppress, contrary to the majority, I consider that the state carried its burden of proving that the confession was made freely and voluntarily. The evidence of promises and inducements herein was not sufficient to justify a finding that the confession was not made freely and voluntarily. Therefore, I consider that the trial judge abused his discretion in granting defendant Jackson's motion to suppress.
Accordingly, I respectfully dissent.
NOTES
[*] Chief Judge PAUL B. LANDRY, Jr. retired, participated in this decision as an Associate Justice Ad Hoc.
[1] The trial judge ruled that the arrest of Jackson and Sneed and the search of the van was lawful. We do not consider here the validity of those rulings, the only issue presented by this writ being the judge's ruling on Jackson's confession.
[2] If Harold Sneed were being tried in a separate trial, Toxi Jackson's confession, being hearsay, would not be admissible against Harold Sneed, although, of course, the state could call Toxi Jackson to the witness stand. As defendants are to be tried together the admission into evidence of a co-defendant's confession (even if admissible against the co-defendant) would violate defendant Sneed's Bruton rights if co-defendant Jackson did not take the witness stand. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 476 (1968).
[3] This standard was reaffirmed in Hutto v. Ross, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) where the court stated that "causation in [the `but for'] sense has never been the test of voluntariness." Ross v. Hutto, 429 U.S. 30, 97 S.Ct. 203.
[4] Officer O'Neal testified at the motion to suppress hearing as follows:

Q You promised her protection?
A Yes, sir.
Q How did you offer to furnish that protection?
A Through the Federal Witness Program.
BY THE COURT:
Through what, sir?
BY THE WITNESS:
Through the Federal Witness Program, if it was possible.
Q Did you make that promise or did Officer Kirkpatrick?
A I don't recall exactly who made the statement as to the specific officer who made that statement, but she was advised that she would be protected. I was present when it was made.
Q Did you outline how the Federal Witness Program works?
A I believe we ran it down a little bit to her, yes.
Q And you told her you really ... (inaudible)
A We advised her she could be very helpful in our case against Harold Sneed. Harold Sneed was the basis of our investigation.
Q Now you didn't say that you would drop the charges but you did say you'd talk to the D.A. about it.
A We would consult the district attorney, yes.
Q What were you going to consult the D.A. about?
A We were going to consult the district attorney to see about any potential involved with her testifying against Harold Sneed.
Q What did you tell her about the Federal Witness Program?
A She would be provided with protection, if necessary. She would be provided with a means of leaving town.
Q And giving her money?
A That's correct.
Q How much? Did you tell her how much?
A No, sir, I don't have any idea how much.
Q You all weren't going to move her to another state and sit by and see her starve?
A I don't believe they would do that, no, sir.
Q You told her you'd give her a new identity, new life ...
A I don't know if they would go that far, but ...
Q But that's what you indicated to Toxi Jackson.
A They would help her, yes.
Q And did you indicate that there would be any problem arranging for this?
A Run that question by me again.
Q Did you tell her there would be a problem doing this, that maybe you could do it, and maybe you couldn't.
A We told her that we were fairly certain it could be arranged.
Q What else did you tell her?
A In what regard?
Q With regard to protecting her if she would give this confession or statement.
A Well, we told her that once she made her bond and was back on the street if Harold Sneed would give her any trouble, just to call us and we would consult the district attorney with what happened to her again about possible charges of intimidation of a witness or anything like that. And if she had any trouble with Harold Sneed on the street just to get in touch with us.
Q Did you ever make any arrangements to get this Federal Witness protection?
A No, sir.
[5] For a fairly old case in which this court found similarly that a policeman's promise that a defendant "might be used as a state witness" was an impermissible inducement voiding the required voluntariness of a confession, see State v. Johnson, 30 La.Ann. 881 (La.1878).
[6] Ms. Jackson indicated her outset expectation that she would be treated differently from Sneed when she stated: "I'm not going to jail for nothing. It's not my pills..."
[7] The only allusion to defendant's bond made at the motion to suppress was the following statement by Officer O'Neal:

"Well, we told her that once she made her bond and was back on the street if Harold Sneed would give her any trouble, just to call us and we would consult the district attorny with what happened to her again about possible charges of intimidation of a witness or anything like that."