916 So.2d 1268 (2005)
STATE of Louisiana, Appellee
v.
Daryl Germaine ROSHELL, Appellant.
No. 40,374-KA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*1269 Louisiana Appellate Project by Edward K. Bauman, and Indigent Defender Board by Michael Bowers, for Appellant.
Paul J. Carmouche, District Attorney, Shenequa L. Grey, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The defendant, Daryl Germaine Roshell, was found guilty by a jury of attempted manslaughter, attempted armed robbery, and two counts of armed robbery. He was adjudicated a third felony offender based on one of the armed robbery convictions and sentenced to 100 years hard labor. He was also given sentences of 20 years for attempted manslaughter, 35 for attempted armed robbery, and 40 years for the other armed robbery to be served concurrently with the 100 year sentence.
The defendant argues that his convictions should be reversed on the grounds that the trial court erred in denying a motion to suppress his confession. We find no error in the trial court's denial of the motion to suppress. However, error patent review shows that the defendant was erroneously adjudicated as a third felony offender. Therefore, we reverse both the adjudication as a third felony offender and the sentence of 100 years, and we remand for the state to bring a new habitual offender proceeding and then for resentencing by the trial court on the armed robbery conviction that is subject to the enhanced habitual offender penalty. Otherwise, the defendant's convictions and sentences are affirmed.

FACTS
On August 23, 2002, three City of Shreveport employees, Alvin Cox, Calvin Cross, and Elmo Rogers, were working to clear a sewer drain at the corner of Carver and Broadway streets when two individuals wearing bandannas over their faces approached them and demanded their money. One of the assailants was hollering and waving a gun around. Both Rogers and Cross gave the gunman their money, *1270 but Cox told the gunman that he did not have any. After Cox refused the gunman's second demand for money, the gunman walked behind him and shot him in the back of the head. At the sound of the gunshot, Rogers and Cross fled by diving into the drainage ditch.
A Crime Stoppers tip by Jessie Caldwell led police to question the defendant on September 28, 2002, as a suspect in the robberies and shooting. The defendant denied any knowledge of the crimes and claimed that he had been in Dallas when they occurred. Because Caldwell refused to testify, the police had nothing more to go on and suspended the case.
However, Caldwell again came forward in May 2003, and agreed to testify. Caldwell gave a statement to the police which led them to Daryl "Duck" Houston, known as the defendant's brother. The police believed the defendant had given the gun used in the incident to Houston. Houston told police that he could retrieve the gun but needed $100 to do so. He was given the money, and the police got the gun. The gun fit the description of the weapon used during the crimes.
On May 30, 2003, the police picked up the defendant, who for reasons not clear in the record was at the Caddo Correctional Center. While being driven to the interview location, the defendant denied any involvement in the crimes. However, once shown the gun, the defendant asked to speak to his brother, and Houston was called to the station. The defendant had a private conversation with Houston of no more than 15 minutes, after which Houston told the police that his brother would tell the truth. The defendant then gave a statement to the police admitting his involvement in the crimes. The defendant was ultimately charged with attempted second degree murder, attempted armed robbery, and two counts of armed robbery.
Two motions to suppress the defendant's confession were filed prior to trial. The first was filed by the defense attorney on March 15, 2004, and asserted that the statement was induced by "threats and promises made by the Shreveport Police Department during the investigation of the crimes." The second was a pro se motion by the defendant filed on March 25, 2004, alleging that the statement was made in response to "intimidations and threats by police and while under duress." The defendant's pro se motion further alleged that the police told him that due to the victims being city employees, they were under "pressure to make an arrest and they didn't care who that person was or if they did it."
A hearing on the motions to suppress was held on April 27, 2004. The state presented the testimony of Detective Rod Johnson and Sgt. Brian Strange of the Shreveport Police Department. Johnson testified as to the investigation that led to the defendant's confession. He described the defendant's reaction to seeing the gun by stating, "I think he would have crawled up the wall if he could have." Johnson did not know what the defendant and Houston talked about prior to the defendant's statement. Finally, he asserted that no threats, coercion, violence, or promises were used by the police to induce the defendant's statement. Strange also described the defendant as "visibly upset" upon seeing the gun. He did not hear any of the conversation between the defendant and his brother, Houston. Lastly, Strange also denied that any threats of violence, coercion, or promises were used by the police to induce the confession.
The defendant testified that when the police first picked him up for the interview, he denied any involvement in the crime. He also denied asking to see his brother, and he stated that Houston was not his *1271 brother. He explained that he sold drugs for Houston and that they called each other brother for identification purposes with their neighborhood buyers. He also explained that he listed Houston as his brother in his jail records so that Houston could bring him clothes and contact him in jail. The defendant's story was that Houston told him the police kicked in his door and found guns, drugs, and a bulletproof vest. Houston wanted him to take the charge and told him that he knew where his mother stayed. The defendant testified that he took this as a threat by Houston, whom he described as a violent person with money and influence as a drug dealer. He testified that Houston told him exactly what to say. On cross examination, the defendant could not explain why he did not mention Houston's threats in his motion to suppress. Instead, he claimed that the police tried to make him touch the gun, that a detective mouthed to him what to say during the interview, that they tried to bribe him with coffee and cigarettes, and that they left Houston in a room with him to threaten his handicapped mother. He also suggested that Houston was a confidential informant.
After taking the matter under advisement, the trial court denied the motions to suppress upon determining that the defendant's statement was freely and voluntarily given. The matter proceeded to a trial at which defense counsel renewed the objection to the confession being admitted into evidence. In compliance with La. C. Cr. P. art. 703(G), the state introduced the circumstances under which the confession was obtained. Detective Johnson testified about both interviews with the defendant so that the jury learned that he had denied any involvement until after having spoken to Houston.
The jury found the defendant guilty of attempted manslaughter and attempted armed robbery of Alvin Cox, armed robbery of Calvin Cross, and armed robbery of Elmo Rogers. Defendant was then adjudicated a third felony offender and sentenced as previously set forth. Motions for a new trial, post-verdict judgment of acquittal, and reconsideration of sentence were all denied, as was the defendant's pro se motion for a new trial. This appeal, which challenges the trial court's denial of the motions to suppress, followed.

DISCUSSION

Motion to Suppress
The defendant's sole assignment of error is that the trial court erred in denying the motion to suppress. He argues that the state failed to prove that his statement was made voluntarily, since it was given after Houston threatened to harm his mother. He asserts that in the absence of the improperly admitted confession, the evidence was not sufficient to convict.
According to the state, the defendant's claims that he was coerced into giving a confession and only repeated details told to him lacks credibility and merit. The state asserts that the trial court did not believe the defendant was forced to give a statement and that under the holding of State v. Coleman, 32,906 (La.App.2d Cir.4/5/00), 756 So.2d 1218, writ denied, 00-1572 (La.5/23/01), 787 So.2d 1010, that factual determination should not be disturbed.
Before a confession may be introduced into evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La. R.S. 15:451. The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession at a hearing on a motion to suppress. State v. Coleman, supra; State v. Hills, *1272 354 So.2d 186 (La.1977). The state must also affirmatively prove that the defendant was first advised of his Miranda rights and that the confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. State v. Johnson, 36,014 (La. App.2d Cir.6/12/02), 821 So.2d 652. The testimony of the interviewing police officer alone may be sufficient to prove the defendant's statement was given freely and voluntarily. State v. Trotter, 37,325 (La. App.2d Cir.8/22/03), 852 So.2d 1247, writ denied, 2003-2764 (La.2/13/04), 867 So.2d 689, recon. denied, 2003-2764 (La.4/23/04), 870 So.2d 282; State v. Henderson, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.
In State v. Jackson, 381 So.2d 485 (La.1980), and State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, a confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. See Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) and State v. Roddy, 33,112 (La. App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288.
The admissibility of a confession is a question for the trial court, whose conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Coleman, supra; State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Because the trial court has the opportunity to observe the witnesses and assess their credibility, we place great weight on its factual determinations. State v. Crews, 28,153 (La. App.2d Cir.5/8/96), 674 So.2d 1082.
While the state has the burden of proving the admissibility of the confession in a trial on a motion to suppress, the defendant has the burden of proving the ground of his motion. La.C.Cr.P. art. 703(D). Two motions were filed to suppress the defendant's statement made on May 30, 2003. The first, filed by defense counsel on March 15, 2004, claimed that the confession was made under "threats and promises made by the Shreveport Police Department during the investigation of the crimes." The second, filed by the defendant on March 25, 2004, claimed that the confession,
was made under intimidations and threats by police and while under duress. Police stated because it was a case involving a city employee there was pressure to make an arrest and they didn't care who that person was or if they did it, if I didn't they would give me the charge.
Review of the allegations made in the motions to suppress shows that neither raised coercion by Houston as grounds for suppression of the confession. The defendant did not even raise the alleged coercion by Houston in his pro se motion for a new trial, in which he wrote only that he was intimidated by the "police surroundings" and alleged that a long and threatening interrogation, lack of counsel, being transported across town, being "tricked" into handling a gun, and being promised that he "would see home again" caused him to confess. However, the issue of alleged coercion by Houston was alluded to in defense counsel's post-verdict judgment of acquittal filed on July 30, 2004, which states, "It was only after a conversation with Daryl Houston that the defendant gave a statement. Something said to him *1273 while they were speaking together made Daryl Roshell give a false statement."
At the hearing on the motion to suppress, Johnson and Strange testified that the defendant asked to speak with Houston and afterwards, after being read his rights and signing a waiver, he voluntarily gave his statement. Nothing in the tape indicates that Roshell was distraught, hesitant, or under any stress. On the tape, he stated that he had not been threatened. The record shows that the allegations regarding the detectives' role in Houston's alleged threat appear to have been an afterthought by Roshell. Nothing in the record, aside from the defendant's own claims, suggests that the detectives inappropriately used Houston, forced the defendant to speak with Houston, had knowledge of what was said during Houston's conversation with the defendant, or had any part in the threats allegedly made by Houston.
The denial of the motions to suppress indicates that the trial court apparently believed the police officers' testimony that Roshell asked for Houston to be brought to the station and that they did not hear the conversation between Roshell and Houston, whom they had reason to believe was the defendant's brother. On this record, it is reasonable to believe that the defendant, who referred to Houston as his brother and listed him as such on his jail records, would have asked to speak with him. The trial court holds the advantageous position of observing the witnesses and being able to assess their credibility. Thus, the court's determination that the statement was given freely and voluntarily is entitled to great weight. After listening to the testimony and observing the witnesses, the trial court determined that the state had met its burden. Implicit in that finding is that the defendant did not meet his burden of proving the "ground of his motion[s]" as required by La.C.Cr.P. art. 703(D).
Our review of this record shows that the defendant asserted whatever claim he could think of to have his confession suppressed. When cross-examination forced him to address the discrepancy between the grounds alleged in the two motions to suppress and his testimony centering on alleged threats by Houston, he stated a litany of improper actions by the police which he alleged caused him to confess under duress. The defendant's grasping at any grounds possible to have his confession given after a valid waiver of rights suppressed was unconvincing to the trial court and is unconvincing to this court. The trial court's ruling denying the motion to suppress shows that the court found the defendant lacking in credibility. Thus, the trial court disbelieved the defendant's denial that he asked to speak to Houston, his claims of threats by Houston, his suggestion that Houston was a confidential informant, and his allegations of intimidations, threats, and promises by the officers. The trial court's finding that the defendant's confession was given voluntarily is supported by the entire record. Considering the great weight placed on the trial court's factual determinations and our review of the record, we find no merit to the defendant's claim that the trial court erred in denying the motions to suppress. Finding that the confession was properly admitted into evidence at trial, we will not address the defendant's argument regarding the sufficiency of the evidence in absence of the confession.

Error Patent
In reviewing the record for error patent, we find that the defendant was improperly adjudicated a third felony offender. The habitual offender provisions found in La. R.S. 15:529.1(A)(1) provide, in pertinent part, "Any person who, after *1274 having been convicted within this state of a felony ..., thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows...." (Emphasis added.) This statute and jurisprudence require that prior convictions must precede the commission of the principal offense in order for use to enhance a defendant's status as a multiple offender. See State v. Lennon, 427 So.2d 860 (La.1983); State v. Ball, 32,498 (La. App.2d Cir.12/15/99), 748 So.2d 1249, writ denied, XXXX-XXXX (La.10/6/00), 770 So.2d 364.
The convictions utilized by the state to bill the defendant as a third felony offender included:
1. Purse snatching committed on October 14, 1998, pled guilty on August 31, 1999, and sentenced that same day to two years hard labor under Docket No. 198,526, First Judicial District Court, Caddo Parish, Louisiana.
2. Forgery committed on June 27, 2002, pled guilty on October 3, 2002, and sentenced that day to one year at hard labor, suspended, with one year active supervised probation and restitution ordered, under Docket No. 224,468, First Judicial District Court, Caddo Parish, Louisiana.
3. Armed robbery, count three among the charges in this case, committed on August 23, 2002, found guilty by jury on May 14, 2004, and sentenced to 100 years hard labor on November 10, 2002, under Docket No. 228,787, First Judicial District Court, Caddo Parish, Louisiana.
The listing of convictions shows that at the time of the commission of the third felony, the defendant had not yet been convicted of the forgery used as the second felony offense for purposes of adjudication as a third felony offender. In light of this error in the habitual offender adjudication, we hereby reverse the defendant's adjudication as a third felony offender and the 100 year sentence for the count three armed robbery as a third felony offense. We remand the matter to allow the state to bring a new habitual offender proceeding and for the trial court to then resentence the defendant on the enhanced armed robbery conviction.

CONCLUSION
For the reasons stated in this opinion, we affirm the defendant's convictions and his concurrent sentences of 20 years of hard labor for the attempted manslaughter, 35 years of hard labor for the attempted armed robbery, and 40 years of hard labor for the armed robbery listed as count four. The defendant's adjudication as a third felony offender and his sentence of 100 years of hard labor for the count three armed robbery conviction are reversed, and the matter is remanded for the state to bring a new habitual offender proceeding and for the trial court to then resentence the defendant on the armed robbery conviction for count three of the charges.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.