979 So.2d 678 (2008)
STATE of Louisiana, Appellee
v.
Michael JACKSON, Appellant.
No. 43,139-KA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 2008.
*679 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Jason Brown, Assistant District Attorney, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
MOORE, J.
Michael Jackson appeals his conviction, adjudication as a second felony offender, and concurrent 99-year sentences on two counts of armed robbery. For the reasons expressed, we affirm the conviction but reverse the second felony offender adjudication, vacate the sentences and remand for further proceedings.

Factual Background
On the evening of October 21, 2002, Steven Thompson was leaving his place of work on Marshall Street in downtown Shreveport. As he was getting in his 2001 *680 Kia Spectra, he heard a tap on the window; looking up, he saw it was a black man holding a pistol. The gunman ordered, "Get out and lay on the ground or you will be shot." As Thompson started down, a second black man, wearing a hooded sweatshirt, grabbed him from behind, roughly pushed him to the ground and searched his pockets. The second man took his car keys and wallet with about $40 cash. The assailants got into the Kia and started it; the gunman pointed the pistol at Thompson and warned him to stay back. The assailants then fled in the car.
Thompson walked to the city bus terminal and told a policeman that he had been carjacked. The assailants were not apprehended. However, using information from other arrests, Officer James Cromer assembled a photo lineup including Michael Jackson's picture. Thompson was unable to make a positive identification, but he testified that both men were probably under the age of 21 and the gunman had braided hair.
The Kia was found in Bossier City a few days later. Officer Amy Muller, an expert in fingerprint analysis, dusted it for prints. She found that two latent prints lifted from the outside of the passenger door matched file prints of Michael Jackson; other latents elsewhere on the car, however, did not match.
On November 3, about two weeks after the Kia was stolen, Melvin Nelson was driving his 1996 Mazda Protegé near the courthouse in downtown Shreveport between 10 and 11 pm. While he was waiting at a light, two black men wearing black hoodie sweaters and black pants walked up to his car. One was holding a gun, and the other told Nelson to get out of the car. The gunman entered the passenger door and held the weapon on Nelson; the other assailant ordered him to empty his pockets. Nelson had no cash, just an ID and an ATM card, but the gunman took these. Nelson then exited the car; the second assailant got into the driver's seat and drove east on Texas Street toward Bossier City. Nelson walked to a nearby pay phone to call the police.
Two nights later, Sgt. Mark Mahoney of the Bossier Sheriff's Office was investigating a complaint of an attempted carjacking at the Princeton Post Office. The victim described the suspect vehicle as a tan Mazda Protegé carrying four black males, which Sgt. Maloney saw speeding on 220. He engaged them in a high-speed chase into Caddo Parish, where the Mazda turned around on North Market Street, got back on the loop, and drove back into Bossier. The car exited at Benton Road and pulled into some grass near Northside Drive, where all suspects bolted and ran. The fleeing men discarded two weapons, a Bryco Arms 9 mm semi-automatic pistol and a Tech 9, along the road. All four men were soon apprehended; one of them was Jackson. The other suspects gave statements that Jackson had been driving the Protegé before the chase.
Detective Jeff Brown prepared photo lineups including Jackson and one of the occupants of the Protegé, Eddie Hamilton. Nelson positively identified Jackson and Hamilton as the men who carjacked him on November 3. The weapons did not yield any usable fingerprints, and the record does not state if any prints were recovered from the car.
The state charged Jackson by bill of information with three counts of armed robbery, including the October 21 taking of Thompson's Kia, the November 3 taking of Nelson's Protegé, and another incident involving a third victim, Christopher Criss. Jackson proceeded to jury trial in June 2007, at which the state dismissed the charge involving Criss.
*681 At trial, the victims and law enforcement officers established the facts summarized above. The only other witness to testify was Jackson's accomplice, Eddie Hamilton, who had been allowed to plead guilty to first degree robbery in exchange for a nine-year sentence and the promise to testify truthfully against Jackson. On the stand, Hamilton admitted that Jackson was his "homeboy," but then denied that they ever robbed anybody, and insisted that all his previous statements to police were lies. He admitted being arrested in Bossier, riding in a tan car, and that he ran away because somebody had committed a crime, but denied any knowledge of what had happened. The prosecutor impeached him with the transcript of his Boykin hearing, but Hamilton still insisted all prior statements were coerced and untrue. At Jackson's sentencing, the district court stated that Hamilton had been subsequently charged with perjury.
The jury unanimously found Jackson guilty as charged on both counts of armed robbery. The state then billed him as a second felony habitual offender, alleging that his first felony was a November 2004 conviction in Bossier Parish for attempted armed robbery with a firearm, and that after the first conviction, Jackson committed and was convicted of the instant armed robberies that occurred between October 21 and November 3, 2002. After the district court denied his motion to quash the second felony offender bill, Jackson pled guilty as charged, reserving his rights to appeal the conviction and sentence.
In July 2007, the district court sentenced Jackson to two concurrent terms of 99 years at hard labor without benefit of probation, parole or suspension of sentence. Jackson now appeals. Counsel has designated two assignments of error; by pro se brief, Jackson assigns four errors.

Discussion: Sufficiency of the Evidence
By his first assignment of error, Jackson urges the evidence was insufficient to prove he committed the armed robberies. The only evidence connecting him to the armed robbery of Stephen Thompson was the presence of his fingerprints on the exterior of Thompson's Kia. This proves only that he touched the car at some point in time, not that he robbed Thompson; there was no evidence to prove when or where the Kia was located; and Thompson could not identify him from the photo lineup. Jackson concedes that the other victim, Melvin Nelson, positively identified him, but in all other respects, Nelson's testimony was vague, and it was positively refuted by Hamilton's trial testimony. By his first pro se assignment, Jackson complains that police never arrested the driver of the Protegé, Jonathan Campbell.
The state responds that Jackson's fingerprints on the Kia, his apprehension in and flight from the Protegé, and Hamilton's post-arrest statement to police were more than sufficient to support both convictions.
The standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, *682 within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94.
A defendant's fingerprint on an object associated with a crime is direct evidence that he touched the object at some time and circumstantial evidence that he touched it at the time of the offense. State v. Allen, 95-1515 (La.App. 1 Cir. 6/28/96), 677 So.2d 709, writ denied, 97-0025 (La. 10/3/97), 701 So.2d 192. When circumstantial evidence is used to prove the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Ultimately, all evidence  both direct and circumstantial  must be sufficient under Jackson v. Virginia to prove guilt beyond a reasonable doubt. State v. Robinson, XXXX-XXXX (La.4/14/04), 874 So.2d 66.
Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
Being based on the fingerprint on Thompson's Kia, the connection between that car and Jackson was admittedly circumstantial. However, Thompson testified that he did not know Jackson and he could think of no reason why Jackson's fingerprints would be on the car. Officer Cromer testified that the Kia had been recovered in Bossier Parish, the same jurisdiction where Jackson, Hamilton and others later ditched the Protegé. Finally, Thompson generally described both assailants as black males probably younger than 21, and the gunman as having braided hair; at the time of the offense, Jackson was 18 years old and the jury could easily infer, from the photo lineup, whether Jackson's hair may have been braided in November 2002. On this record, the jury could reasonably conclude that Jackson's fingerprints were on the Kia because he was one of the people who took it from Thompson at gunpoint, and that no reasonable hypothesis of innocence could be inferred from the evidence.
As to the other offense, Nelson positively identified Jackson as one of the people who stole his Protegé on November 3; this evidence, if accepted by the jury, was sufficient to support the conviction. Admittedly, the testimony of Eddie Hamilton conflicted with his post-arrest statements and his admissions on the record of his Boykin hearing, implicating Jackson as his accomplice. However, the jury was entitled to disregard his in-court recantation as a futile effort to help out his "homeboy." We will not disturb the jury's reasonable credibility calls.
Finally, there is no substance to Jackson's pro se complaint that the state failed to charge Jonathan Campbell with a crime. There is no record evidence to this effect, and at any rate, the district attorney has the unlimited discretion to prosecute "whom, when, and how" he chooses. La. C. Cr. P. art. 61. Jackson has not shown that the state's action or inaction against Campbell has any bearing on his own guilt.
These assignments of error lacks merit.

Trial Errors Not Preserved
By his third pro se assignment of error, Jackson urges the state knowingly used false, perjured testimony and that this evidence contributed to the guilty verdict. The 14th amendment prohibits the state from using perjured testimony; to prove a violation, the defendant must demonstrate (1) that a witness for the state *683 testified falsely, (2) that such testimony was material, and (3) that the prosecution knew that the testimony was false. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Jackson asserts that, prior to calling him as a witness, the prosecutor met with Hamilton and gained knowledge of his intent to commit perjury.
By his fourth pro se assignment, Jackson urges the district attorney committed prosecutorial misconduct by vouching for the credibility of a state's witness. In closing argument, the prosecutor said that Thompson and Nelson were very credible witnesses, and added, "I am glad that we agree." Jackson contends that this "guarantee to the jury that the witnesses would not lie" denied him a fair trial.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. La. C. Cr. P. art. 841 A. The contemporaneous objection rule applies to claims that the prosecutor used perjured testimony. State v. Lowery, 33,905 (La.App. 2 Cir. 2/28/01), 781 So.2d 713, writ denied, XXXX-XXXX (La.2/22/02), 809 So.2d 978; State v. Bishop, 571 So.2d 749 (La.App. 2 Cir. 1990). It also applies to claims that the prosecutor made an improper closing argument. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). The record discloses no contemporaneous objection to either of these alleged acts of prosecutorial misconduct, so these arguments are not properly preserved for review.
Even so, there is absolutely no substance to either claim. The prosecutor was obviously surprised by Hamilton's trial testimony, which was diametrically opposite to his admissions at his Boykin hearing; in fact, the prosecutor impeached him with the transcript of the prior proceeding and subsequently charged him with perjury. Any claim that the prosecutor knowingly offered perjured testimony is utterly without record support. Further, the prosecutor's remark in closing argument merely recognized defense counsel's admission that Thompson was a "very credible witness." This was an entirely proper comment on the witness's credibility based on evidence in the record. State v. Sayles, 395 So.2d 695 (La.1981); State v. Montgomery, 42,835 (La.App. 2 Cir. 1/9/08), 974 So.2d 110. These assignments are devoid of merit.

Second Felony Offender Adjudication
By his second pro se assignment, Jackson urges the court erred in adjudicating him a second felony offender. Although the argument is far from articulate, he contends that "under the Habitual Offender Status [sic], for one to be considered [a] second offender, [the] second [offense] must have been committed after the first conviction," State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973). This particular quotation came from the second sentence of La. R.S. 15:529.1 B, which was repealed by 1982 La. Acts No. 688, § 1, and can no longer be considered controlling authority.
Nevertheless, the first sentence of R.S. 15:529.1 A(1) still states, "Any person who, after having been convicted in this state of a felony * * *, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows * * *" (emphasis added). This portion of the statute, and the jurisprudence interpreting it, require that the prior conviction must precede the principal offense in order to be used as a predicate to enhance a defendant's status as a multiple offender. State v. Roshell, *684 40,374 (La.App. 2 Cir. 12/14/05), 916 So.2d 1268, writ denied, XXXX-XXXX (La.10/6/06), 938 So.2d 69; State v. Ball, 32,498 (La.App. 2 Cir. 12/15/99), 748 So.2d 1249, writ denied, XXXX-XXXX (La.10/6/00), 770 So.2d 364; State v. Butler, XXXX-XXXX (La.App. 4 Cir. 1/12/05), 894 So.2d 415, writ denied, XXXX-XXXX (La.5/13/05), 902 So.2d 1017; State v. Gilbert, 99-315 (La. App. 5 Cir. 4/25/00), 760 So.2d 536.
The bill of information alleges that the predicate felony conviction, for attempted armed robbery with a firearm, arose from a guilty plea on November 17, 2004,[1] while the instant offenses occurred over two years earlier, on October 21 and November 3, 2002. Because the enhanced offense occurred before the predicate conviction, we are constrained to reverse the second felony offender adjudication, vacate the sentences, and remand to the district court for further proceedings. State v. Roshell, supra; State v. Ball, supra.

Conclusion
We have reviewed the remainder of the record and find nothing else we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, the conviction is affirmed, the second felony adjudication reversed, the sentences vacated and the case remanded for further proceedings.
CONVICTION AFFIRMED; SECOND FELONY OFFENDER ADJUDICATION REVERSED; SENTENCES VACATED, AND CASE REMANDED.
NOTES
[1] The bill also recites that Jackson received a sentence of four years at hard labor for this conviction; we note parenthetically that this appears illegally lenient, as it is shorter than the mandatory five years at hard labor without benefits prescribed by La. R.S. 14:64.3 B.