NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-408

STATE OF LOUISIANA

VERSUS

RASHEED ALI STERLING

**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 10-237740
HONORABLE JOHN E. CONERY, DISTRICT JUDGE
**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

AFFIRMED.

J. Phillip Haney
District Attorney, Sixteenth Judicial District
Angela B. Odinet, Assistant District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
COUNSEL FOR APPELLEE:
    State of Louisiana

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Rasheed Ali Sterling**

**Rasheed Ali Sterling**
**E. Hunt Correctional Ctr.**
**P. O. Box 174**
**St. Gabriel, LA 70776-0174**

**PICKETT, Judge.**

**FACTS**

On May 26, 2006, the defendant Rasheed Ali Sterling, and Hebert Wilson robbed the Rees Street Branch of Farmer-Merchants Bank & Trust Company in Breaux Bridge, Louisiana. The two men wore masks. While fleeing the bank, one of the robbers threw several items out the car window. A cap, hand towel, and glove were recovered. DNA was recovered from these items and, in 2009, the DNA was matched to Hebert Wilson. Wilson confessed to the robbery and stated that the defendant was his co-robber. The defendant was apprehended in January 2010. He was questioned by two Federal Bureau of Investigation Special Agents in New Orleans. The defendant confessed to the robbery.

On February 19, 2010, the defendant was charged by a bill of information with four counts of armed robbery, violations of La.R.S. 14:64. The defendant filed a "Motion to Suppress the Confession" on February 17, 2011. A hearing was held on March 23, 2011, and the motion was denied. On April 11, 2011, the defendant pled guilty to one count of armed robbery but preserved his right to appeal the trial court's ruling on the motion to suppress. In exchange for the plea, the State dismissed the other three counts and agreed it would not seek the firearm enhancement or file a multiple bill against him and recommended a cap of thirty-five years imprisonment. The defendant was sentenced on June 28, 2011, to thirty years at hard labor without the benefit of parole, probation, or suspension of sentence.

The defendant has perfected a timely appeal wherein he alleges one assignment of error and two *pro-se* assignments of error.

## ASSIGNMENTS OF ERROR

Through counsel, the defendant asserts one error:

The trial court erred in denying Rasheed Sterling's Motion to Suppress the Confession.

The defendant also filed a pro se brief alleging two errors:

1. U.S. Fourth Amendment (Unreasonable searches and seizures) - Petitioner avers that his above aforementioned constitutional rights were violated.

2. There where [sic] insufficient [ ] evidence in the Petitioner['s] conviction. State failed to meet its burden of proof beyond a reasonable doubt.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by staff for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## DISCUSSION

Sufficiency of the Evidence

The defendant's second pro se assignment of error concerns the sufficiency of the evidence to sustain the conviction for armed robbery. We will address this assignment first for the reason that if there was merit to the defendant's contention, he could be entitled to an acquittal and the remaining assignment of error would be moot. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970 (1981).

However, the defendant pled guilty to the crime of armed robbery on April 11, 2011. At the guilty plea hearing, the defendant stated he understood the elements of the alleged offense and acquiesced in the state's recitation of the facts in the case. He then pled guilty. A defendant waives a sufficiency of the evidence review when he enters a guilty plea to the offense for which he has been charged. *State v. Sullivan*, 02-360 (La.App. 3 Cir. 10/2/02), 827 So.2d 1260, *writs denied*,

2

02-2931 (La. 4/21/03), 841 So.2d 790, and 02-2965 (La. 9/5/03), 852 So.2d 1024.

Accordingly, under the circumstances of this case, the assignment is not reviewable.

Admissibility of the Confession

The defendant argues that the confession he gave to two FBI agents was not freely given. He asserts that he confessed under duress, intimidation, and threats. The interrogation was not recorded. The trial court based its ruling on Agent Williams' testimony only.

> Before a confession may be introduced into evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La. R.S. 15:451. The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession at a hearing on a motion to suppress. *State v. Coleman*, [32,906 (La.App. 2 Cir. 4/5/00) 756 So.2d 1218, *writ denied*, 00-1572 (La. 3/23/01), 787 So.2d 1010] *supra*; *State v. Hills*, 354 So.2d 186 (La.1977). The state must also affirmatively prove that the defendant was first advised of his Miranda rights and that the confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. *State v. Johnson*, 36,01 (La.App.2d Cir.6/12/02), 821 So.2d 652. The testimony of the interviewing police officer alone may be sufficient to prove the defendant's statement was given freely and voluntarily. *State v. Trotter*, 37,325 (La.App.2d Cir.8/22/03), 852 So.2d 1247, *writ denied*, 2003-2764 (La.2/13/04), 867 So.2d 689, *recon. denied*, 2003-2764 (La.4/23/04), 870 So.2d 282; *State v. Henderson*, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.

> In *State v. Jackson*, 381 So.2d 485 (La.1980), and *State v. Morvant*, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, a confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) and *State v. Roddy*, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, *writ denied*, 2000-1427 (La.5/11/01), 791 So.2d 1288.

> The admissibility of a confession is a question for the trial court, whose conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. *State v.*

3

> *Coleman, supra*; *State v. Thibodeaux,* 98-1673 (La.9/8/99), 750 So.2d 916, *cert. denied,* 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Because the trial court has the opportunity to observe the witnesses and assess their credibility, we place great weight on its factual determinations. *State v. Crews*, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082.

*State v. Roshell,* 40,374, pp. 6-7 (La.App. 2 Cir. 12/14/05), 916 So.2d 1268, 1271-72, *writ denied,* 06-771 (La. 10/6/06), 938 So.2d 69.

At the suppression hearing, Special Agent Williams testified that he was with the FBI and was assigned to the task force that assisted the State of Louisiana with locating fugitives and investigating violent crimes within the state. Following Wilson's confession and revelation that the defendant was the co-robber, the task force located the defendant in New Orleans after a two-week investigation. Their attempts to apprehend him were unsuccessful until they learned that he might be attending his mother's funeral. He was apprehended without incident and transported to the FBI office in New Orleans.

The defendant was given food and drink after he was settled into the interrogation room. Special Agent Williams stated the first thing he asked the defendant was if he was willing to speak with them about the charges for which he was arrested. The defendant stated he was so willing. Special Agent Williams then read him the *Miranda* warnings. He used a form used by the FBI, FD-395, and read the warnings to the defendant. The defendant read the form along with him. He stated that the defendant then freely confessed to his participation in the armed robbery of Farmer-Merchants Bank & Trust Company in Breaux Bridge. The interrogation was attended by another agent, Special Agent Hudman.

Special Agent Williams explained that the FBI has a policy that they do not record interrogation sessions such as in this case. He stated that with over twelve thousand Federal agents in the United States, it would be very burdensome to keep

4

and catalogue all the interviews they conducted. He said that there must be exigent circumstances existing in order to even receive permission to record an interrogation.

The defendant asserted that his confession was coerced by threats against his girlfriend and their child, whom he had been staying with in New Orleans. In brief, he argues that he was told she would be kicked out of her Section 8 apartment if he did not cooperate. The special agent testified there were no threats of this sort. He explained certain consequences might be indicated to suspects, but he was certain neither he nor Special Agent Hudman even discussed this possibility with the defendant.

The defendant argues that he was especially vulnerable to threats at that time because he was taken from his mother's funeral the day of the interrogation. When asked about the defendant's demeanor after being taken from the funeral, the special agent indicated that the defendant was not weeping, he was coherent, and he did not appear to be inconsolable.

Following testimony and arguments, the trial court stated:

The court accepts the testimony of the officer as credible. He testified clearly that he had absolutely no recollection of telling this defendant that his girlfriend (the mother of his children) would be evicted from Section 8 housing or loose [sic] her children or in any way conveying any bad consequences to the mother if Mr. Sterling didn't cooperate.

To the contrary, the officer said he positively has no recollection of any such statement being made.

It would seem to the Court that, if such statements had been made, this experienced officer would have recollection. He had none. So based on his credible testimony, the court also finds that Mr. Sterling was in such a state of mind as he could and in fact did voluntarily waive his rights and give a voluntary statement.

While certainly it could be argued that he was at a moment of weakness, the officer's testimony was clear that such moment would have passed by the time he was in police headquarters, and that he was not crying, he was not inconsolable. To this officer's best

recollection, he made a free and voluntary statement witnessed by one of the other officers and signed by Mr. Sterling. The statement comes in.

We find no error in the trial court's ruling. The voluntary nature of the confession was supported by the evidence. As noted above, the testimony alone of the interviewing officer may be sufficient to establish the voluntariness of the statements. The defendant signed a consent form indicating he was willing to talk to the agents without counsel being present. The defendant was not new to the legal process. There is no evidence to support the defendant's argument that the statement was given under duress. In fact, the evidence supports the trial court's finding that Mr. Sterling's state of mind was such that he could and did voluntarily waive his rights.

There is no merit to this assignment of error.

Violation of the Fourth Amendment

The defendant argues that his Fourth Amendment rights against unreasonable searches and seizures were violated when he was picked up by the federal agents without probable cause. The defendant cites *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968) and refers to La.Code Crim.P. art. 215.1 and argues that "[i]n the present case, not only did the State and the agents failed [sic] to show that Hebert Wilson was credible and reliable, but it also failed to demonstrate that the officers had knowledge of particular facts sufficient to reasonably suspect petitioner Rasheed Ali Sterling of criminal activity."

The defendant's reliance on *Terry* and Article 215.1 is misplaced. Both *Terry* and Article 215.1 stand for the proposition that an officer may stop a citizen in a public place and question him if the officer reasonably suspects the person has committed or is about to commit an offense and demand of him his name, address, and an explanation of his actions. The reasonable suspicion must be articulable. In

6

the current case, the federal agents had an arrest warrant issued in November 2009. The agents did not need to articulate reasonable suspicion to detain the defendant or probable cause to arrest him in this case.

The defendant also contends he was not properly *Mirandized* prior to the agents interrogating him. He argues that "the warnings given by the agents were insufficient under Miranda because they did not include a warning that any statement he made could be used as evidence against him and the right against self-incrimination. In addition, the failure to advised [sic] him that he could have a lawyer present while being questioning [sic]." However, Special Agent Williams testified that the defendant was indeed given the *Miranda* warnings. He stated he read the *Miranda* form to the defendant as the defendant read along. The defendant then signed the form. His signature was witnessed by Special Agents Williams and Hudman. The form specifically stated that he had the right to remain silent, that anything he said could be used against him, that he had the right to have a lawyer present, and that he could stop answering questions at any time. That form is a part of this record, has been reviewed by this court, and is entirely sufficient to advise the defendant of his legal rights.

The defendant argues that the facts asserted in the affidavit in support of the arrest warrant are hearsay and falsehoods. He contends that the agents failed to establish the credibility and reliability of Herbert Wilson prior to initiating his arrest. However, as noted above, all these allegations of defect were waived when the defendant pled guilty. The defendant did not raise any issue concerning the validity of the arrest warrant prior to his guilty plea. In *State v. Crosby*, 338 So.2d 584 (La.1976), the supreme court created the rule that a defendant could reserve the right to contest pre-plea defects as a condition of the guilty plea. However, this rule only applied to those "assignments of error specifically reserved at the time of

7

the plea of guilty[.]" *Id.* at 588. *See also State v. Cummings*, 07-1304 (La.App. 3 Cir. 4/30/08), 983 So.2d 246, *writ denied*, 08-1187 (La. 2/20/09) 1 So.3d 489 and *State v. McFarland*, 07-26 (La.App. 5 Cir. 5/29/07), 960 So.2d 1142, *writ denied*, 07-1463 (La. 1/7/08), 973 So.2d 731. There is no merit to this assignment of error.

## CONCLUSION

The defendant's conviction for armed robbery is affirmed.

**AFFIRMED.**

This opinion if not designated for publication.
See Uniform Rules Courts——of Appeal, Rule 2-16.3.